# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **QDS INJECTION MOLDING, L.L.C.,** <br><br> Plaintiff and Counterdefendant, <br><br> v. <br><br> **UNITED MAXON, INC., dba SCUBAMAX,** <br><br> Defendant and Counterclaimant. | CASE NO. SACV 09-1412 DOC (RNBx) <br><br> **O R D E R** GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

O

Before the Court are cross-Motions for Summary Judgment filed by Plaintiff, QDS Injection Molding, LLC, and Defendant, United Maxon, Inc. in the above-captioned case. After considering the moving, opposing and replying papers thereon, as well as oral argument, the Court hereby GRANTS in part and DENIES in part Defendant's Motion and DENIES Plaintiff's Motion.

## I. BACKGROUND

QDS Injection Molding, LLC ("Plaintiff") is the owner of all rights and interests in United States Patent No. 6,460,995 (the "'995 Patent") entitled "Multi-Piece Lens Having Bonded Lens Portions." Plaintiff's invention broadly can be described as scuba diving mask that

provides a wider view field than a conventional diving mask because of its lens structure. Specifically, Plaintiff's invention eliminates the intermediate frame found between the front and side lenses of preexisting scuba masks. The United States Patent and Trademark Office issued the '995 Patent to Plaintiff on October 8, 2002.

Plaintiff claims that Defendant United Maxon, Inc. ("Defendant") knowingly infringed and continues to infringe the '995 Patent. Specifically, Defendant purportedly imports, sells, and offers for sale scuba diving masks that are covered by the '995 Patent. Defendant's scuba mask also claims to increase divers' peripheral vision. However, instead of bonding the front and side lenses of the mask directly together, Defendant attaches the front and side lenses to a thin, intermediate hinge.

Both parties move for summary judgment on Plaintiff's claim for patent infringement as well as on Defendant's counterclaim for declaratory relief of non-infringement and invalidity.

**II.  LEGAL STANDARD**

    **a.  Summary Judgment**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

    **b.  Patent Infringement**

A determination of patent infringement proceeds in two steps. *Terlep v. Brinkman Corp*,

418 F.3d 1379, 1381 (Fed. Cir. 2005). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Id.* (quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed.Cir.1993)). Claim construction is an issue of law, *see Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that is reviewed de novo by the Federal Circuit, *see Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed.Cir.1998) (en banc). Infringement, on the other hand, is a question of fact. *Terlep*, 418 F.3d at 1381 (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir.1998)). Where the facts underlying the issue of infringement are undisputed, the function of applying claims to the accused device is the province of the district court. *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1984).

### c. Patent Validity

A patent is presumed valid. 35 U.S.C. § 282. "Because a patent issued by the U.S. Patent and Trademark Office is presumed to be valid . . . the evidentiary burden to show facts supporting a conclusion of invalidity is clear and convincing evidence." *Transclean Corp. v. Bridgewood Serv., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002) (*citing WMS Gaming, Inc. v. Int'l Game Techs.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999)). The test for validity encompasses three distinct tests of patenatability: novelty, utility, and nonobviousness. The presumption of validity therefore entails a presumption of novelty, a presumption of utility, and a presumption of nonobviousness. *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707 (Fed. Cir. 1984); *see also Raytheon Co. v. Roper Corp.*, 724 F.2d 951 (Fed. Cir. 1983). If, however, a challenger can prove facts by clear and convincing evidence establishing that the patent fails even one of these three tests, the challenged patent is invalid.

### III. DISCUSSION

#### a. Claim Construction

Before determining infringement, the Court must construe the proper scope and meaning of the claims at issue in the case. Claim construction may be performed as part of summary judgment proceedings. *See, e.g.*, *Conoco, Inc. v. Energy & Env. Int'l, L.C.*, 460 F.3d

1349, 1359 (Fed. Cir. 2006) ("[A] district court may engage in claim construction during various phases of litigation, not just in a Markman order."). "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc., v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed.Cir. 2000) (internal quotations and citation omitted). Interpreting the asserted claims demands a review of the relevant intrinsic evidence, which consists of the claim language, the written patent specification, and the patent prosecution history. *Telerp*, 418 F.3d at 1382. Extrinsic evidence such as dictionaries also "may be considered if the court deems it helpful in determining the true meaning of the language used in the patent claims," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed.Cir.2005) (en banc) (internal quotations omitted), provided that the court "attach[es] the appropriate weight ... to those sources in light of the statutes and policies that inform patent law," *id.* at 1324.

Here, Plaintiff asserts infringement of independent claims 1 and 8 and dependent claims 3 and 10 of the '995 Patent. The relevant language from these claims reads as follows:

> 1. A multi-piece lens for an eye mask comprising:
>
>   a) a tempered glass planar front lens having at least one first side edge;
>
>   b) at least one tempered glass planar side lens, having at least one second side edge; and
>
>   c) a bonding material between the first and second side edges to attach the at least one tempered glass planar side lens to the at least one side edge of the tempered glass planar front lens such that the at least one tempered glass planar front lens forms an obtuse angle of less than 180 degrees with the tempered glass planar front lens.

1 Exh. A, claim 1.[1] The dispute between the parties centers on the meaning of the limitation set
2 forth in part (c) of the above-quoted language: specifically the portion that reads "a bonding
3 material between the first and second side edges to attach the at least one tempered glass planar
4 side lens to the at least one side edge of the tempered glass planar front lens."[2] Defendant
5 contends that the limitation articulated in part (c) should be construed to mean that "the side and
6 front lenses are directly glued to each other at their respective side edges." Def.'s Claim
7 Construction Brief at 8. Plaintiff, by contrast, argues that the language in part (c) should be
8 construed to mean that "a glue-type material [is] positioned between the first and second edges
9 to interconnect the front and side lenses at their respective edges." Exh. 1 to Pl.'s Claim
10 Construction Brief at 1-2.

11 The differences between the parties' competing constructions boils down to two points:
12 (1) whether "bonding material" refers exclusively to "glue", and (2) whether the front lens and
13 side lens must be directly connected to one another.

### *i.* ***Claim Language***

15 In order to resolve this dispute, the Court looks first to the plain language of the relevant
16 claim limitation. *See North American Vaccine, Inc. v. Cyanamid Co.*, 7 F.3d 1571, 1575 (Fed.
17 Cir. 1993) ("In construing claims, we begin with the language of the claims themselves."); *see*
18 *also Phillips*, 415 F.3d at 1312 ("[I]t is a bedrock principle of patent law that the claims of a

---

[1]Independent claim 3 is substantially identical to independent claim 1 and includes the same disputed language.

[2]In Defendant's Memorandum in Support of its Motion for Summary Judgment, Defendant states that the phrase "such that at least one tempered glass planar [side/second] lens forms an obtuse angle of less than 180 degrees with the tempered glass planar [front/first] lens" is also in dispute. *See* Def.'s Mem. ISO Mot. for S.J. at 6. Defendant's *Markman* brief, however, does not reference this term as a point of contention between the parties. In any event, the Court need not construe this portion of the Plaintiff's claim. Application of the properly construed requirement that "a bonding material [is used] between the first and second side edges to attach the at least one tempered glass planar side lens to the at least one side edge of the tempered glass planar front lens" to a comparison of Plaintiff's and Defendant's products entitles Defendant to summary judgment on its defense of non-infringement.

patent define the invention to which the patentee is entitled the right to exclude."). The words used in the disputed claims must be construed according to the "ordinary and customary" meaning of the terms as they "would have to one of ordinary skill in the art in question at the time of the invention." *Id.* at 1312-13. This ordinary artisan "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

The Court determines that an ordinary artisan would not necessarily interpret the term "bonding material," read on its own, as referring exclusively to glue. For, glue is not the only "material" that functions to "bond" things together. On the contrary, previous patents have referred to "various types of bonding materials, including glues, varnishes, lacquers and synthetic resins." *Arthur J. Schmitt Foundation v. Stockham Valves & Fittings, Inc.*, 292 F. Supp. 893, 899 (D. Ala. 1968) (describing one feature of U.S. Patent No. 2,092,903). "Glue" is one possible interpretation of the phrase "bonding material," but it is not the only possible interpretation. The Court must look beyond the surface of the claim language to determine the meaning of this phrase.

Whether the claim's statement that the bonding material "attach[es] the at least one tempered glass planar side lens to the at least one side edge of the tempered glass planar front lens" requires a direct connection between the front and side lenses of the mask proves similarly difficult to resolve by reference to the claim language alone. Reading the term "attached to" in conjunction with the instruction that a "bonding material" is used to accomplish the attachment suggests that the claim language at issue refers exclusively to direct attachment: it unlikely than an ordinary artisan would not conceive of the term "bonded to" as encompassing indirect attachment. However, in a recent decision, the Federal Circuit held that the term "coupled to," a phrase similar to the term "attached to," should be read to include indirect, as well as direct, attachment. *Bradford Co. v. Conteyor North America, Inc.*, 603 F.3d 1262, 1270-71 (Fed. Cir. 2010). The Court must turn to the patent specification and the patent prosecution history in order to conclusively construe this term.

                ***ii.       Specification***

1         When the meaning of the claim is in doubt, courts look to the patent specification for guidance. *North American Vaccine*, 7 F.3d at 1576. *See Markman*, 52 F.3d at 979 (stating that the claims "must be read in view of the specification, of which they are a part."). In fact, the Federal Circuit has counseled that the specification is the "single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1314 (internal quotations omitted). The powerful role of the specification derives from statute. *Id.* 1316. Specifically, 35 U.S.C. § 112 requires that all patent specifications describe the claimed invention in "full, clear, concise, and exact terms." 35 U.S.C. § 112. The Federal Circuit has held that "[i]n light of the statutory directive that the inventor provide a 'full' and 'exact' description of the claimed invention, the specification necessarily informs the proper construction of the claims." *Phillips*, 415 F.3d at 1316.

        In many instances, the specification may "reveal an intentional disclaimer, or disavowal, of claim scope by the inventor." *Phillips*, 415 F.3d at 1316. In such cases, "the inventor has dictated the correct claim scope and the inventor's invention, as expressed in the specification, is regarded as dispositive." *Id.*

        Here, the specification of the '995 Patent refers repeatedly, and explicitly, to glue as the relevant bonding material. The "Summary of the Invention" portion of the specification indicates that the "view field is connected by ***glueing*** 'tempered glass' with 'tempered glass' . . . ." Exh. A to Decl. of N. Dilger, Col. 1: 47-49 (emphasis added). A few lines later, the specification references the "***glued*** position between above-mentioned glasses." *Id.*, Col. 1:54-55 (emphasis added). In the next paragraph, the specification explains that "the ***glue*** for connection between the above-mentioned glasses can be UV silicone glue." *Id.*, Col. 1:59-60. Similarly, the "Detailed Description of the Invention" section of the specification provides that the "front glass and side glasses can be connected by ***glue***, such that water or liquid cannot be passed through," *id.*, Col. 1: 38-40, and that the "***glue*** can be selected materials such as UV silicone glue." *Id.*, Col. 1:40-41.

        Notably, the specification never states that glue is the ***only*** possible bonding material to be used in the invention. In fact, at one point, the specification explains that the "lens structures can be glued by glass which is more than two pieces . . . ." *Id.*, Col. 1: 64-65. While the

7

meaning of this instruction is unclear (the specification does not explain how glass can be substituted for glue and Plaintiff does not address this portion of the specification in its briefing), this statement arguably contemplates the use on non-traditional bonding materials. Be that as it may, this solitary, unexplained and perplexing reference to glass-as-glue does not outweigh the specification's repeated references to traditional glue. The specification's emphatic use of the word glue strongly suggests that, at the time the '995 Patent was prosecuted, Plaintiff intended that the front and side lenses of the mask be glued together.

The specification's repeated reference to glue also indicates that the '995 Patent describes a mask with the front and side lenses attached directly to one another. As stated above, the concept of glueing one thing to another necessarily connotes direct attachment. Lest there be any doubt, the specification also includes explicit assertions to the effect that "the view field is connected by glueing ***tempered glass to tempered glass***," *id.*, Col. 1: 48-49 (emphasis added), and that "the ***front glass and side glasses are connected*** by glue." *Id.*, Col. 2: 38-39. Both of these statements indicate that the two frames are meant to be adhered together, without any additional pieces in between them.

### iii. *Prosecution History*

The prosecution history of the '995 Patent resolves any remaining doubts as to the proper construction of the disputed claim. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317. In particular, the doctrine of prosecution estoppel requires that the claims must be interpreted the same way in litigation as they were in prosecution. *Springs Window Fashions LP v. Novo Industries, L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent. A patentee may not state during prosecution that the claims do not cover a particular device and then change his position and later sue a party who makes that same device for infringement.").

In this case, during the prosecution of the '995 Patent, Plaintiff explicitly stated, in a

8

preliminary amendment to the patent file, that "[a]ll of applicant's claims . . . require . . at least one planar side lens . . . glued to the at least one side edge of the front lens by silicone glue . . . ." Exh. B. to Decl. of N. Dilger, at 3. Plaintiff relied on this description of the claimed invention to help distinguish the '995 Patent from prior art, asserting that the "admitted prior art [did] not disclose even the broad concept of a glue material between the side edges of the at least one planar side lens and the side edge of a planar front lens as required by all of Applicant's claims." *Id.* at 4. The doctrine of prosecution estoppel bars Plaintiff from retracting these statements now in order to hold Defendant liable for infringement. Plaintiff's arguments during prosecution – that direct connection using glue is a required component of the '995 Patent – are binding on Plaintiff in the instant case.

Examination of all of the relevant factors – the plain language of the disputed claim, the patent specification, and Plaintiff's statements during prosecution – lead the Court to adopt Defendant's proposed construction of the disputed claim language. The portion of the '995 Patent that reads "a bonding material between the first and second side edges to attach the at least one tempered glass planar side lens to the at least one side edge of the tempered glass planar front lens," is construed to mean that "the side and front lenses are directly glued to each other at their respective side edges." With this construction in mind, the Court turns to the question of infringement.

### b. Infringement

To determine infringement, the Court must compare Plaintiff's properly construed claims to Defendant's accused products. *Terlep*, 418 F.3d at 1381. "For a court to find infringement, the plaintiff must show the presence of every element [of the claim] or its substantial equivalent in the accused device." *Id.* at 1385 (quoting *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed Cir. 1994)). An element of an accused product is "substantially equivalent" to an element of the allegedly infringed product if the differences between the two are "insubstantial" to one of ordinary skill in the art. *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1359 (Fed. Cir. 2000). However, prosecution history estoppel prevents a patentee from invoking the doctrine of equivalents in order to recapture subject matter surrendered during

prosecution. *Id.*

Comparing Plaintiff's properly construed claims to Defendant's product, the Court concludes that no reasonable jury could find that Defendant's dive mask includes "side and front lenses [that] are directly glued to each other at their respective side edges." Rather, the side and front lenses of Defendant's mask are separated by a thin frame between the two lenses, which functions as a type of floppy hinge, similar to the floppy connection commonly used to hold and carry six-packs of soda. Yeh Decl., ¶¶ 2-4. As a result of this frame, there is no direct glueing between the front and side lenses of Defendant's product. In other words, Defendant's mask embraces the type of intermediate frame structure, common to the prior art, that Plaintiff sought to distinguish during the prosecution of the '995 Patent. To be sure, Defendant has made this frame thinner and, in so doing, arguably has solved the same problem of visual impairment that Plaintiff tried to solve with its invention. Meeting the same consumer demand, however, has never been the test for patent infringement. Indeed, the concept of scuba masks with reduced visual impairment is an unpatentable idea. *Cf. Bilski v. Kappos*, 130 S. Ct. 3218, 3230 ( stating that "'[i]t is conceded that one may not patent an idea[,]'" and holding that a patent explaining the "basic concept of hedging, or protecting against risk, " was not valid).

In an attempt to save its claims of infringement, Plaintiff directs the Court's attention to a patent owned by the third-party manufacturer of Defendant's products, U.S. Patent No. 7,305,719 ("'719 Patent"), which states, in its specification, that the hinge used in the mask "bonds to the main lens of the at least one peripheral lens to connect the peripheral lens to the main lens." Exh. A to Pl.'s Opp. to Def.'s Mot. for SJ. As an initial matter, Plaintiff has provided insufficient proof that the structure described in the '719 Patent is used in Defendant's masks. In its opposition to Defendant's Motion for Summary Judgment, Plaintiff states that Defendant's expert "has testified at his deposition in this Action that the '719 patent describes the lens configuration used in the accused lens of this litigation . . .." Pl.'s Opp. to Def.'s Mot. for SJ at 1. But Plaintiff offers no citation in support of this claim. In any event, the description contained in the '719 Patent specification does not give rise to a finding on infringement. The '719 Patent specification does not describe a mask whose front and side edges adhere directly to

one another; on the contrary, the cited specification explicitly states that a hinge exists between the two lenses.

Defendant's dive masks plainly does not include every element of the masks described in the '995 Patent. Accordingly, no reasonable jury could find that Plaintiff has proven a case of literal infringement. In addition, given Plaintiff's statements during prosecution of the '995 Patent, Plaintiff may not invoke the doctrine of equivalents in order to argue that lenses separated by a thin hinge is "substantially equivalent" to lenses bonded by glue. During prosecution, Plaintiff distinguished its invention by emphasizing the fact that its mask featured front and side lenses glued directly together. *See* Exh. B. to Decl. of N. Dilger, at 3 (Plaintiff stressing, in a preliminary amended to the patent file, that "[ a]ll of applicant's claims . . . require . . at least one planar side lens . . . glued to the at least one side edge of the front lens by silicone glue . . .."); *id.* at 4 (distinguishing Plaintiff's invention from prior art by asserting that the "admitted prior art [did] not disclose even the broad concept of a glue material between the side edges of the at least one planar side lens and the side edge of a planar front lens as required by all of Applicant's claims."). Having relied on these assertions in order to secure a patent, Plaintiff cannot now disavow the important role that glued, direct bonding between the front and side lenses of the dive mask plays in its invention.

Even if the Court were to apply the doctrine of equivalents to Plaintiff's claim, the Court still would not find infringement. Because each element contained in a patent claim is deemed material to defining the scope of the patented invention, an equivalency analysis must focus on each individual element of the claim, not on the invention as a whole. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997). This element-by-element examines whether the element in the accused product "performs substantially the same function in substantially the same way to obtain the same result as the claim limitation." *AquaTex Indus. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (internal quotation omitted). In light of this standard, Plaintiff's argument that a scuba mask containing front and side lenses linked together by a thin, floppy hinge is functionally equivalent to a scuba mask containing front and side lenses attached by glue is irrelevant. For, an ordinary artisan, focused on the

1 specific element of lens connection, would discern substantial differences between the function
2 performed by a firm, glued connection and a floppy, hinged connection. The doctrine of
3 equivalents does not save Plaintiff's claim for infringement.

4     In sum, no reasonable jury could find infringement of independent claims 1 and 8 of the
5 '995 Patent. If an independent claim is not infringed, any claim that depends from it necessarily
6 is not infringed. *See Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed.
7 Cir. 1989). Accordingly, no reasonable jury could find infringement of dependent claims 3 and
8 10 of the '995 Patent. Defendants are entitled to judgment as a matter of law on their defense of
9 non-infringement.

10     Accordingly, the Court [GRANTS] Defendant's Motion for Summary Judgment on
11 Plaintiff's claim for patent infringement and [DENIES] Plaintiff's motion for the same.

12         **c.**      **Validity of the '995 Patent**

13     The parties also seek summary judgment on Defendant's counterclaim for declaratory
14 relief on the invalidity of the '995 Patent. As explained above, in order to establish invalidity,
15 Defendant bears the burden of proving by clear and convincing evidence that the '995 Patent
16 lacks novelty, utility, or nonobviousness. Here, Defendant argues that the '995 Patent is obvious
17 and was anticipated by the prior art.

18     A claim is considered anticipated by prior art, and therefore invalid, "if each and every
19 limitation is found either expressly or inherently in a single prior art reference." *Bristol-Myers*
20 *Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001). Defendant
21 has come forward with no evidence of prior art that incorporated each and every limitation of the
22 '995 Patent. Accordingly, no reasonable jury could find that the '995 Patent was anticipated.

23     Even if not anticipated, 35 U.S.C. § 103 dictates that a patent is invalid if the patented
24 invention is so obvious that "the differences between the subject matter sought to be patented
25 and the prior art are such that the subject matter as a whole would have been obvious at the time
26 the invention was made to a person having ordinary skill in the art to which said subject matter
27 pertains." 35 U.S.C. § 103. Interpreting 35 U.S.C. § 103, the Supreme Court has held that "a
28 combination of familiar elements according to known methods is likely to be obvious when it

does no more than yield predictable results." *KSR Intern Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007). Stated differently, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *Id.* On the other hand, a combination from non-analogous sources, in a manner that reconstructs the invention only with the benefit of hindsight, is insufficient to create a prima facie case of obviousness. *See Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 678-79 (Fed. Cir. 1998).

In support of its obviousness argument, Defendant notes that the only difference between the '995 Patent and the admitted prior art is that the '995 Patent removes the thin vertical frame separating the front and side edges of the prior art and bonds the lenses together with a bead of glue. Defendant submits that, prior to the issuance of the '995 Patent, this kind of "frameless" technology was commonly used to create high-end frameless glass shower stalls and frameless glass aquariums. Def.'s Mem. ISO Mot. for SJ at 12 (citing U.S. Patent No, 4,176,620). Defendant further contends that dive mask producers recognized the benefits of a frameless dive mask with panoramic vision long before Plaintiff received its patent, citing a 1961 advertisement featuring a dive mask comprised of a single glass pane bent at each edge in order to curve into the shape of a mask. *Id.* at Exh. L. The prior art and innovation cited by Defendant establishes a strong prime facie case of obviousness.

Genuine issues of material fact, however, preclude the entrance of summary judgment on obviousness grounds. Plaintiff has presented objective evidence of non-obviousness. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors U.S.A., Inc.*, 617 F.3d 1296, 1304 (Fed. Cir. 2010) (explaining that although defendant had presented "a prima facie case of obviousness, this is not the end of the analysis." given that plaintiff "presented significant objective evidence of nonobviousness."); *see also id.* at 1305 (explaining that although "it is true that we have held in individual cases that objective evidence of nonobviousness did not overcome the strong prima facie case-this is a case-by-case determination," and emphasizing that "a district court must always consider any objective

evidence of nonobviousness presented in a case.") (internal citations omitted).  Specifically, Plaintiff points out that, according to the patents referenced by Defendant in its Statement of Uncontroverted Facts, manufacturers had been trying since at least 1961 to produce a dive mask that allowed for maximum peripheral vision – but no one had succeeded in bonding the front and side lenses directly together through transparent glue.  In addition, Plaintiff has adduced evidence of the significant commercial success enjoyed by masks constructed in accordance with the '995 Patent, which implies innovation on Plaintiff's part.  *See id.* (citing Plaintiff's evidence of substantial commercial success as one of the factors justifying reversal the district court's grant of summary judgment on obviousness grounds).  In particular, Plaintiff's 30(b)(6) witness, Johnson Shiue, testified at his deposition that 447,000 covered dive masks were sold over the last three calendar years despite a troubled global economy and the elevated price charged for such dive masks relative to conventional masks.

In light of the genuine issues of material fact presented by Plaintiff's objective evidence of non-obviousness, summary judgment on Defendant's counterclaim of invalidity is inappropriate.  Both parties motions for summary judgment on this counterclaim are [DENIED].

**IV.   DISPOSITION**

For the reasons set forth above, Defendant's Motion for Summary Judgment on Plaintiff's claim of patent infringement is GRANTED.  Plaintiff's Motion for Summary Judgment for the same is DENIED.

Both parties Motion for Summary Judgment on Defendant's Counterclaim of Invalidity are DENIED.

IT IS SO ORDERED.

DATED: May 4, 2011

                                                         _____
                                                              DAVID O. CARTER
                                                       United States District Judge